[No. F058850. Fifth Dist. Jan. 10, 2011.]

FRANKIE NAJERA, Plaintiff and Appellant, v.
IRENE HUERTA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts D.1. and E. of Facts and Procedural History, and part I. of Discussion.

Counsel

Sawl & Netzer and John R. Malmo for Plaintiff and Appellant.

Stammer McKnight Barnum & Bailey and Bruce J. Berger for Defendant and Appellant.

Opinion

KANE, J.—In this personal injury case arising out of an automobile-versus-motorcycle traffic collision, the jury found that defendant Irene Huerta was the sole negligent cause of the accident and awarded plaintiff Frankie Najera total damages of $728,703.83. According to the verdict form, the damages consisted of past medical expenses ($45,908.83), past wage loss ($12,540), future medical expenses ($480,855), future wage loss ($114,400) and future pain and suffering ($75,000). After judgment was entered on the verdict, defendant moved for a new trial on two grounds: (i) the award of future damages was excessive, and (ii) plaintiff's counsel engaged in improper conduct during trial. The trial court agreed that relief was warranted on the first ground and granted a new trial on the issue of future damages only. Meanwhile, in his memorandum of costs, plaintiff claimed entitlement to expert witness fees and prejudgment interest because defendant had allegedly failed to accept plaintiff's Code of Civil Procedure section 998 offer of settlement (section 998 offer).[1] Defendant moved to tax said costs, arguing that plaintiff's section 998 offer—which was served at the time of the original summons and complaint—was not made in good faith. The trial court granted defendant's motion and thereby denied recovery of the challenged costs.

Plaintiff appeals from both the order granting a new trial and the order taxing costs, arguing that each ruling constituted an abuse of the trial court's discretion. Defendant's response includes a protective cross-appeal contending that if the order granting a new trial on the ground of excessive damages is not affirmed, a new trial should still be required on the alternative basis of attorney misconduct. For reasons that follow, we affirm both of the trial court's orders and dismiss the cross-appeal as moot.

## FACTS AND PROCEDURAL HISTORY

### A. The Accident

On November 9, 2007, defendant was driving her van westbound on Avenue 256 in Tulare County. She came to a complete stop at the stop sign

---

[1] Unless otherwise indicated, all future statutory references are to the Code of Civil Procedure.

where Avenue 256 intersects with Mooney Boulevard. At that location, Mooney Boulevard is a north/south highway on which the flow of traffic is not controlled by a stop sign or signal and the speed limit is 60 miles per hour. Defendant looked both to her right and left before proceeding into the intersection to make an intended left turn onto Mooney Boulevard. Unfortunately, defendant did not see plaintiff's motorcycle in the northbound lanes of Mooney Boulevard approaching the intersection at a speed of 55 to 60 miles per hour. When defendant pulled forward, she did so directly in front of plaintiff's oncoming motorcycle. Plaintiff's motorcycle immediately struck defendant's van and plaintiff was ejected into the air and thrown forward onto the pavement, thereby sustaining traumatic injuries to many parts of his body.

### B. *Facts Relating to Offer to Compromise*

On April 28, 2008, plaintiff's attorney made a prelitigation policy limit demand on defendant's insurance carrier, State Farm Mutual Automobile Insurance Company (State Farm). The demand included a summary of plaintiff's injuries, medical bills to date, and alleged lost earnings. State Farm requested further information about certain of the damages claimed in the demand (i.e., lost earnings), but plaintiff's attorney never responded to that request. Instead, plaintiff's complaint was filed in Tulare County Superior Court on May 28, 2008.

On June 9, 2008, defendant was served with the summons and complaint, along with a section 998 offer to settle or compromise the action for the sum of $50,000. Defendant delivered the pleadings and other documents to State Farm, which then assigned the case to Attorney Bruce Berger to provide a defense. Mr. Berger's office purports to have received the file from State Farm on June 26, 2008. Mr. Berger was at that time preparing for another trial and had an associate draft and file a general denial to answer the complaint. When Mr. Berger completed the other trial, he learned of the section 998 offer and sent a letter to plaintiff's counsel objecting that the offer was premature and not in good faith because there had been insufficient opportunity to review medical records and conduct basic discovery in order to substantiate plaintiff's damage claims. Mr. Berger's letter also stated it was his understanding that plaintiff's law firm had a policy to not extend the 30-day deadline for accepting a section 998 offer. Attorney John Malmo, a member of plaintiff's law firm, responded in writing that the section 998 offer *was* in good faith in light of the earlier policy limit demand that had been sent to State Farm. Mr. Malmo did not deny or otherwise comment on whether his firm had a *no extension* policy. In reply, Mr. Berger once again wrote to register his objection to the practice of serving section 998 offers before there was adequate time to conduct discovery and independently investigate and evaluate a case.

## C. *Trial and Verdict*

Trial of this action commenced on May 18, 2009, and concluded on May 28, 2009, when the jury announced its verdict. A majority of the testimony at trial concerned the nature of plaintiff's injuries sustained in the accident, and the issue of what past and/or future medical treatment was reasonably necessary as a result of such injuries, including the cost of such medical treatment. Plaintiff called as his expert witnesses a chiropractor and three medical doctors. Defendant's expert witness was a board certified orthopedic surgeon. The respective experts were diametrically opposed on certain important questions relating to future medical treatment, in particular whether surgeries were warranted on plaintiff's neck, back, wrist, knee and ankle as a result of the injuries sustained in the accident. The jury found in favor of plaintiff and awarded him $728,703.83 in total damages. The verdict itemized the damages as follows: $45,908.83 for past medical expenses; $12,540 for past wage loss; $480,855 for future medical expenses; $114,400 for future wage loss; and $75,000 for future pain and suffering. The jury awarded nothing ("$0.00") for past pain and suffering. Judgment was entered on the verdict on July 2, 2009.

## D. *Postjudgment Motions*

### 1. *New Trial Motion**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 2. *Motion to Tax*

In a second posttrial motion, defendant moved to tax (or strike) certain costs that were claimed by plaintiff in the memorandum of costs. Specifically, defendant challenged plaintiff's claim of entitlement to expert witness fees ($19,500) and prejudgment interest ($72,870.38). Plaintiff had alleged that such costs were recoverable under the provisions of section 998 (& Civ. Code, § 3291), because defendant failed to accept a section 998 offer to compromise the action within 30 days after service thereof and plaintiff thereafter obtained a damage award that exceeded the amount of the offer. Defendant's motion to tax costs argued that plaintiff should not be awarded such costs because plaintiff's section 998 offer was not made in good faith since it was served with the summons and complaint before there had been an adequate time for a reasonable investigation or discovery of facts to evaluate plaintiff's offer. The trial court agreed with defendant's position and granted the motion to tax costs.

---

*See footnote, *ante*, page 872.

E. *The Appeal and Cross-appeal*[*]

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## DISCUSSION

I. *Order Granting New Trial*[*]

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

II. *Order Taxing Costs*

Plaintiff argues the trial court abused its discretion when it granted defendant's motion to tax costs and thereby denied plaintiff certain costs pursuant to section 998, namely expert witness fees and prejudgment interest (see also Civ. Code, § 3291). We disagree.

### A. *Standard of Review*

"A prevailing party who has made a valid pretrial offer pursuant to Code of Civil Procedure section 998 is eligible for specified costs, so long as the offer was reasonable and made in good faith. [Citation.]" (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 [84 Cal.Rptr.2d 753].) "Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion." (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 450 [82 Cal.Rptr.3d 715].) " 'In reviewing an award of costs and fees under Code of Civil Procedure section 998, the appellate court will examine the circumstances of the case to determine if the trial court abused its discretion in evaluating the reasonableness of the offer or its refusal.' [Citation.]" (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 185 [80 Cal.Rptr.3d 812].) On appeal, the burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown along with a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. (*Nelson v. Anderson, supra*, at p. 136.) Such a discretionary ruling will not be disturbed on appeal absent a showing that discretion was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710 [235 Cal.Rptr. 510].)

---

[*]See footnote, *ante*, page 872.

### B. *Lack of Good Faith of Section 998 Offer*

An important factor in deciding whether a section 998 offer is unreasonable or in bad faith is whether the offeree was given a fair opportunity to intelligently evaluate the offer. As stated in *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699 [241 Cal.Rptr. 108]: "[T]he section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one. If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer." (See also *Nelson v. Anderson, supra,* 72 Cal.App.4th at pp. 135–136.) As similarly expressed in *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 390 [85 Cal.Rptr.2d 4]: "[L]itigants should be given a chance to learn the facts that underlie the dispute and consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial."

In *Barba v. Perez, supra,* 166 Cal.App.4th 444, a case cited by both parties, a section 998 offer was served by the plaintiff at the same time as the complaint and summons. (*Barba v. Perez,* at p. 449.) The plaintiff later obtained a judgment that exceeded the amount of the offer, and sought recovery of prejudgment interest and expert witness fees. The defendant moved to tax these costs, but the trial court denied the motion. On appeal, the defendant argued the section 998 offer was not in good faith because when the offer was served he had no basis to determine if the offer was reasonable. (*Barba v. Perez,* at pp. 449–450.) The Court of Appeal was not persuaded by the defendant's argument because "[t]he parties had a close, semifamilial relationship, and there was free flow of information between them," and information had actually been provided in connection with the section 998 offer. (*Barba v. Perez,* at p. 450.) On these facts, the majority could not conclude the trial court abused its discretion in awarding costs pursuant to section 998, and the order was affirmed. (*Barba v. Perez,* at p. 451.) The majority disagreed with the dissenting justice, who argued that a defendant should *always* "be entitled to complete minimal discovery before being expected to evaluate and respond to a 998 offer." (*Barba v. Perez,* at p. 453 (dis. opn. of Sims, J.).)

In so holding, the majority commented further: "Even assuming a situation (unlike the one presented here) where a defendant has no information about the plaintiff's damages when served with an early section 998 offer, defense counsel may request that plaintiff provide informal discovery on the damage issue and/or allow an extension of time to respond to the demand. If plaintiff's counsel refused to accord the defendant these courtesies and unyieldingly insisted that defendant respond without information, such conduct could then be presented to the trial court when it considered whether

to award special fees and costs. Undoubtedly, such obstinacy would be viewed as potent evidence that plaintiff's offer was neither reasonable nor made in good faith." (*Barba v. Perez, supra*, 166 Cal.App.4th at p. 451 (maj. opn. of Butz, J.).)

█ Here, unlike the case in *Barba v. Perez, supra*, 166 Cal.App.4th 444, there was no free flow of information or preexisting relationship. Instead, the record reflects that when plaintiff's attorney served a prelitigation demand letter on State Farm and further information was requested by State Farm, none was provided. Although a demand served only on an insurer is *not* a section 998 offer (*Arno v. Helinet Corp.* (2005) 130 Cal.App.4th 1019, 1025 [30 Cal.Rptr.3d 669]), the exchange of letters was indicative in this case that gaining information would likely take time and effort. Thus, while the section 998 offer was served concurrently with the summons and complaint, there were no special circumstances present to show that at that early (and time-critical) juncture in the case, defendant's counsel had access to information or a reasonable opportunity to evaluate plaintiff's offer within the 30-day period.

The dissent in *Barba v. Perez, supra*, 166 Cal.App.4th at page 453, aptly explained why it is ordinarily not reasonable to expect defendants to jam basic discovery into the 30 days following the service of a summons and complaint in order to respond to a section 998 offer: "As a practical matter, here is what typically has to happen within 30 days following service of a personal injury complaint upon a defendant: (1) The defendant has to deliver the summons and complaint to his insurance carrier; (2) A claims adjuster for the insurer has to review the allegations of the complaint with the insured; (3) The claims adjuster has to line up counsel for the defendant; (4) Defense counsel has to discuss the allegations of the complaint with the insured and prepare an answer." This appears to have been precisely the hectic scenario in the instant case, as reflected in the correspondence from defense counsel objecting to the timing of the section 998 offer, while unlike *Barba v. Perez*, no countervailing circumstances were present.[9]

We conclude that the trial court did not abuse its discretion in granting the motion to tax costs and thereby denying recovery of special costs pursuant to section 998.

---

[9] In addition, defense counsel's letter referred to the fact that plaintiff's law firm had a policy of serving section 998 offers with the summons and complaint and not granting extensions to section 998 offers. The reply letter from an associate at plaintiff's law firm did not deny that such a *no extension* policy existed.

## DISPOSITION

The orders granting a new trial and taxing costs are affirmed. The cross-appeal is dismissed as moot. Costs on appeal are awarded to defendant.

Wiseman, Acting P. J., and Poochigian, J., concurred.